```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT J. REYNARD, and        )    Civil Action No. 04-0967
SHAWN REYNARD, his wife,      )
                              )
          Plaintiffs          )    JUDGE DAVID S. CERCONE
                              )
                              )
          v.                  )
                              )
TRACY BOWEN, an individual,   )    MAGISTRATE JUDGE
AMA PRO RACING, an Ohio       )    FRANCIS X. CAIAZZA
corporation, and RACER        )
PRODUCTIONS, INC., a West     )
Virginia Corporation,         )
                              )
          Defendants          )
                              )
```

### **REPORT AND RECOMMENDATION**

#### **I. RECOMMENDATION**

In this diversity action, the Plaintiffs, Robert Lee Reynard, Jr. ("Reynard") and his wife, Shawn, seek damages and loss of consortium in connection with injuries sustained in a collision which occurred while Reynard was preparing for a motocross competition. The Defendants' Motion for Summary Judgment based on Robert Reynard's execution of a valid and enforceable release is pending.[1] It is respectfully recommended that the Motion be granted in part and denied in part. With respect to the claims of Robert E. Reynard, the Motion should be granted. As to the claims of his wife, Shawn Reynard, the Motion should be granted in favor of Defendant AMA, and denied as to the

---

[1] The Plaintiffs have admitted that Defendant, AMA Pro Racing ("AMA"), the organization that sponsors, operates, sanctions, and manages a series of professional motocross events, is entitled to summary judgment because it did not employ or control the actions of Defendant Bowen.(Pl. Resp. to Mot. Summ. J. Paragraph 15).

remaining Defendants.

## II. DISCUSSION

### A. Background

On May 25, 2003, Reynard, a professional motocross driver, was taking scheduled practice laps on the motocross course at High Point Raceway in Mt. Morris, Pennsylvania. Somewhere in the vicinity of a sharp curve and the crest of a hill, Tracy Bowen, a track worker operating within the scope of his duties, attempted to cross the course on an all-terrain vehicle ("ATV"). When Bowen rode into Reynard's path, the two collided, seriously injuring Reynard's right wrist and left knee.

Bowen and his employer, Racer Productions, Inc. ("Racer"), the track owner and event promoter, contend that they are insulated from liability for Reynard's injuries by the terms of a comprehensive release executed by Reynard in 2003. This release, drafted on AMA letterhead, is titled "2003 Annual Participant Release, Waiver of Liability, Assumption of Risk and Indemnity Agreement." It applies to a number of identified corporate entities, and, more generally to:

> track owners, officials and their assistants, motorcycles, riders, pit crews, rescue personnel; any persons in any RESTRICTED AREAS, sponsors, advertisers, owners, lessees, designers and constructors of premises used to conduct the EVENT(S) premises and event inspectors, surveyors, underwriters, consultants and others who give recommendations, directions, or instructions or engage in risk evaluation or loss control activities regarding the premises or EVENT(S), all owners, lessees, manufacturers, distributors, wholesalers, retailers, designers, inspectors, and sponsors of all motorcycles and racing; and other equipment on the premises

>       during any EVENT(S), and all other persons,
>       firms, or corporations insured by any liability
>       policy procured by or on behalf of AMA or any
>       EVENT(S) organizers, promoters, sponsors, or
>       teams, and each of them, their directors, agents,
>       officers or employees, all for the purpose herein
>       referred to as the RELEASEES, FROM ALL
>       LIABILITY TO ME, my personal representatives,
>       Spouse, assigns, heirs, and next of kin.[2]

(capitalization, and punctuation errors in original).

The eventualities covered by the release include:

>       ANY AND ALL LOSS OR DAMAGE, AND ANY CLAIMS
>       OR DEMANDS THEREFORE [sic] ON ACCOUNT OF INJURY TO
>       ME OR MY PROPERTY OR RESULTING IN MY DEATH
>       ARISING OUT OF OR RELATED TO THE EVENT(S),
>       from any cause whatever including, without
>       limitation, the failure of anyone to make
>       rules or regulations, the failure to make
>       inspections, the condition of any portion
>       of the track or premises, defective
>       products, and any act or omission of the
>       RELEASEES . . . WHETHER CAUSED BY THE
>       NEGLIGENCE OF THE RELEASEES OR OTHERWISE
>       AND WHETHER OR NOT OCCURRING IN RESTRICTED
>       AREAS.

Reynard also agreed to assume full responsibility for any risk of bodily injury, death, or damage to property.[3]

Reynard asks that the court invalidate the release on two grounds: (1) because it is against public policy generally; and (2) it should be deemed a contract of adhesion. He also argues that the release, even if valid, should not be enforced because it does not address specifically the risk encountered in this

---

[2]Bowen, as an employee of Racer, and Racer, the promoter of the race, are covered by this section of the release.

[3]A second less detailed waiver based on assumption of the risk is contained in the AMA's pro racing riders license agreement which must be signed in order for a racer to compete in any AMA sanctioned event. Reynard signed this agreement on November 9, 2003.

case, i.e. a track worker riding an ATV onto the track into Reynard's path during a practice lap.

### B. Standard of Review

Summary judgment is appropriate only where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The mere existence of some evidence favoring the non-moving party will not defeat the motion. There must be enough evidence with respect to a particular issue to enable a reasonable juror to find in favor of the non-moving party. Anderson v. Liberty Lobby., 477 U.S. 242, 248 (1986). A motion for summary judgment will be granted where the materials in the record, if reduced to admissible evidence, would be insufficient to satisfy the non-moving party's burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### C. Determining Whether the Release is Valid

In Pennsylvania, courts employ a four pronged test to determine the validity of a release:(1) the contract must not violate any policy of the law; (2) the contract must relate to private affairs; (3) each party must be free to bargain so that the contract is not one of adhesion; and (4) the agreement must describe the parties' intent with particularity. Kohr v. Skip Barber Racing Sch., Inc., No. Civ. A 97-3045, 1997 WL 461563 (E.D. Pa. July 31, 1997). Only prongs one and three are in

-4-

dispute.

## 1. Public Policy

Releases signed by participants in vehicle races have regularly been upheld against public policy challenges. "[N]o public policy precludes a court from giving effect to [a racer's] written promise not to hold . . . defendants responsible should he be overcome by the hazards of his chosen sport." Hammer v. Road America, Inc., 614 F. Supp. 467, 470 (E.D. Wis. 1985) (concluding that most jurisdictions enforce exculpatory agreements in the racing context; collecting cases). *See also* Gore v. Tri-County Raceway, Inc., 407 F. Supp. 489, 492 (M.D. Ala. 1974)( same; also collecting cases ). Reynard attempts to avoid application of the general rule, arguing that the release which he signed violates public policy because it ignores a Pennsylvania statute. In support of this contention, Reynard relies on the law governing the safe use of snowmobiles and ATVs, 75 Pa. Con. Stat. §7726 et. seq. This argument is creative, but not persuasive.

The law relating to the safe operation of ATVs was drafted to protect the general public and safeguard property by requiring that the vehicles be operated off-road, at reasonable speeds, in a careful manner, by individuals not under the influence of alcohol, drugs, or other disability. Id.  ATVs may not be operated while the driver possesses a bow and arrow or other firearm, and may not be used to pursue game or wildlife. Id., at § 7727. Those involved in accidents not occurring during a race,

derby, or rally must follow the reporting procedures detailed in § 7728, and § 7729 makes an ATV owner liable for injuries or death caused by an operator using the ATV with the owner's permission.

These provisions clearly were not intended to govern the use of ATVs in the context of a competitive motor sporting event. If the court accepted Reynard's logic, it could reasonably conclude that laws regarding the general safe operation of motorcycles and automobiles be observed during racing events as well. To hold that the statute upon which Reynard relies should be applied here would eliminate much of the excitement, danger, appeal, and the financial viability of motocross racing.

### 2. Is the Release a Contract of Adhesion?

Reynard next argues that the release is not valid because his bargaining power was vastly inferior to that of the AMA, making the release a contract of adhesion. "An adhesion contract is defined as a '[s]tandard form contract prepared by one party, to be signed by the party in a weaker position . . . who has little choice about the terms.'" Robson v. EMC Insurance Co., 785 A. 2d 507, 510 (Pa. Super. 2001)(quoting Black's Law Dictionary (7th ed. 1999)). It is undisputed that Reynard was not in a position to bargain with the Defendants over the terms and conditions in the release. Even if the court grants that the release is, by definition, a contract of adhesion, under Pennsylvania law such agreements are not automatically invalid. Even if one party lacks a meaningful choice in the contract

terms, the contract may yet be valid if the court finds that its terms do not unreasonably favor the other party. Koval v. Liberty Mutual Ins. Co., 531 A.2d 487, 491 (Pa. Super. 1987).

The court is convinced that the terms of the release executed by Reynard do not unreasonably benefit the Defendants. Were it not for broad liability releases, motocross as a professional sport could not survive. Motocross is unquestionably an inherently dangerous sport in which accidents of all sorts occur regularly. "It is an event in which motorcycles are driven over a hilly, curving dirt track containing several 'jumps' that send motorcycles and riders flying through the air." Trainor v. Aztalan Cycle Club, 432 N.W. 2d 626, 627-28 (Wis.1988). Promoters, sponsors, track owners, operators and others working in professional motocross and related sports such as automobile racing could not remain in business absent limitations on their liability. If releases voluntarily executed are not upheld, the cost to those organizing or sponsoring such events will be increased to the point that no one will be willing to undertake sponsorship of any hazardous sporting event.

Reynard has been a professional racer on the AMA motocross circuit since the age of 16. He could not have been unfamiliar with the myriad dangers associated with the sport and the practical concerns underlying the need for broad releases. His parents both participated in motocross, and he testified that they would have signed releases as AMA is the only sanctioning body for motocross in the United States. (Reynard Dep. 6, 59,

72). In order to secure a license to participate in any AMA event, a rider must, as Reynard did, sign a release. In addition, if he elects to participate in an AMA sanctioned event, he must sign a second broader release each year. The liability limitations imposed by these releases do not leave the motocross enthusiast at the mercy of fate. The terms and conditions of the license issued by the AMA require that a rider certify that he has primary medical, permanent disability, and life insurance coverage for injuries occurring during AMA sanctioned events and practices. Presumably, Reynard secured coverage and benefitted from this requirement.

    Reynard knew or should have known that releases were and are an integral part of motocross. He chose, nonetheless, to make his living in the sport. Making a career of motorcycle or automobile racing is a voluntary undertaking, and if a prospective participant wishes to compete professionally on the condition that he not hold the organizer or sponsor of the events liable for his injuries, the courts should enforce such agreements. In these circumstances, the parties' admittedly unequal bargaining position does not unreasonably favor the Defendants. Accordingly, the court will not invalidate the release signed by Reynard.

### D. Enforceability

    Pennsylvania law directs that the enforceability of a valid release be assessed against the background of three general rules: (1) the party claiming immunity bears the burden of proof;

(2) the release must be construed strictly and against the party claiming immunity; and (3) the parties' intent in executing the release must be stated expressly, and with particularity. Employers Liability Assur. Corp. v. Greenville Business Men's Assoc., 423 Pa. 288 (1966). Mindful of these directives, the court addresses Reynard's argument that the release, even if valid, should not be enforced because it "does not specifically exclude from liability the risk of colliding with a track worker during a practice run." (Def. Br. 10).

The court's evaluation of this argument is simplified by the body of case law discussing the enforceability of releases substantially similar to or even less detailed than the one executed by Reynard. In each of these cases, the court has upheld the enforceability of the release on the basis of reasoning which applies with equal force here.

In Zimmer v. Mitchell and Ness, 385 A.2d 437, 474 ( Pa. Super. 1978), aff'd 490 Pa. 428 (1980), the court considered a release in a ski rental agreement which imposed upon the skier "full responsibility for any and all . . . damage or injury." Id., at 477. Holding that "no clearer expression of intent to exculpate [the defendant] is conceivable," the court concluded that the release was enforceable against a plaintiff alleging negligence, even though the word "negligence" did not appear anywhere in the document. Id., at 479. "To say that negligent conduct is not included in [the phrase] 'any liability' is patently incorrect." Id., at 480.

Given the holding in Zimmer, it is not surprising that courts have upheld more detailed releases in cases involving competitive motor sports. In Valeo v. Pocono Int'l. Raceway, 500 A.2d 492  Pa. Super. 1985) a race car driver signed a release holding the defendants harmless "from all liability . . . for all loss or damage and any claim or demands therefore [sic] on account of injury to the person or property. . . , whether caused by the negligence of Releasees or otherwise . . . ." Id., at 492-93. The court called this language "clear" and "broad enough to exclude liability for all degrees of negligence." Id., at 493. Releases containing similar language were enforced in Grbac v. Reading Fair Co., Inc. 521 F. Supp. 1351, 1356 (W.D. Pa. 1981)(holding that release signed by race car driver insulating defendants from "all liability" for "all loss or damage" was specific enough to cover negligence claims); and Schiele v. Simpson Safety Equip., No. 91-1872, 1992 WL 73588 (E.D. Pa. April 7, 1992)(enforcing release containing language used in Grbac to bar claims made by race car driver). A release virtually identical to the one in this case was held to be enforceable in Schillachi v. Flying Dutchman Motorcycle Club, 751 F. Supp. 1169 (E.D. Pa. 1990)  "The intent behind the . . . releases is both clear and specific." Id., at 1174.

This court finds that the intent underlying the release signed by Reynard is also clear and specific. In fact, it is difficult to see how it might have been more so. Where a release contains language as all-encompassing as that used here, it is

-10-

not necessary that it predict and describe the precise scenario giving rise to the claim in order to be enforceable.[4]

### E. Shawn Reynard's Loss of Consortium Claim

At the time of Reynard's injury, his wife was not a party to the release, nor did she execute a separate release.[5] Under Pennsylvania law, though Reynard's right to recover is foreclosed, his wife's is not. Under Pennsylvania law, a loss of consortium claim is a "separate and distinct cause of action, although derivative, from the injured spouses's claim." Barchfeld v. Nunley, 577 A. 2d 910, 912 (Pa. Super. 1990). Reynard's release of his personal injury claim does not alter the impact of his injuries upon his wife. Buttermore v. Aliquippa Hosp., 533 A.2d 481 (Pa. Super. 1987) aff'd in part and rev'd in part on other grounds, 522 Pa. 325 (1989). She is entitled to maintain her status as a "plaintiff in her own right since her damages . . . are personal to her." Barchfeld, 517 A.2d at 912 (quoting Kowal v. Cmwlth. Dept. of Transp., 515 A.2d 116, 119 (Pa. Cmwlth. 1986)).

---

[4] The case upon which Reynard relies in support of his argument regarding inherent risk, Crews v. Seven Springs Mountain Resort, 2005 Pa. Super 138 (2005), is inapposite. In that case the exculpatory language was narrow, providing that the Resort was not liable for injuries caused by risks inherent in the sport of skiing. As a result, it was necessary for the court to determine whether the injury suffered was the result of such a risk. In this case, the language of the release is much broader, insulating the Defendants from liability for claims "arising out of or related to the event(s)," no matter what the cause of injury. The breadth of the language used renders any inquiry into inherent risk irrelevant.

[5] Reynard's wife did sign a release for the 2004 racing season.

### **III. CONCLUSION**

The court recognizes that the injuries suffered by Reynard were significant and were the result of an unfortunate and unusual confluence of circumstances. Nonetheless, the law requires that the court give effect to the release exempting the Defendants from liability for his injuries. The fact that Reynard released his own claims, however, does not extinguish those of his wife. Therefore, the Defendants' Motion For Summary Judgment (Doc. 18) should be granted with respect to claims raised by Robert Lee Reynard. The Motion should be granted in favor of Defendant AMA with respect to claims made by Shawn Reynard, and denied with respect to claims made against the remaining Defendants.

In accordance with the Magistrate's Act, 29 U.S.C. § 636 (b)(1)(B), 636 (b)(1)(b) and (c), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by February 6, 2006.  Responses to objections are due by February 16, 2006.

January 19, 2006

                              S/Francis X. Caiazza
                              Francis X. Caiazza
                              United States Magistrate Judge

Edmond R. Joyal, Jr., Esq.
975 Two Chathem Center

-12-

Pittsburgh, PA 15219


Joshua P. Geist, Esq.
Goodrich, Goodrich & Lazzara
Law & Finance Bldg., Suite 1400
429 Fourth Ave.
Pittsburgh, PA 15219